(100 South. 536)

No. 24714.

## CARTER v. TOWN OF MINDEN.

(May 12, 1924.)

*(Syllabus by Editorial Staff.)*

Bridges ⟨⟩40(2)—**Town held not liable for injuries through breaking of bridge under weight of heavy tractor.**

Where plaintiff driving a 10-ton caterpillar tractor with a trailer across a bridge was injured when bridge gave way, there could be no recovery; defendant town having forbidden use of such machines on bridge which was sufficient to care for ordinary traffic but not built to sustain weight of tractor with its trailer.

Appeal from Second Judicial District Court, Parish of Webster; Robert Roberts, Jr., Judge.

Action by Earl Carter against the Town of Minden. Judgment for defendant, and plaintiff appeals. Affirmed.

Drew & Drew, of Minden, for appellant.

L. K. Watkins, of Minden, for appellee.

By Division A, composed of O'NIELL, C. J., and ROGERS and BRUNOT, JJ.

ROGERS, J. Plaintiff sues to recover $23,475 damages for personal injuries. The accident in which he was hurt occurred on January 10, 1920. Plaintiff was employed by the Standard Oil Company of Louisiana

as a driver on a Holt 10-ton caterpillar tractor. As he was driving said tractor over a bridge, which spanned a small branch or wet-weather stream, on Union street at the foot of College Hill, in the town of Minden, the bridge broke and gave way, precipitating the machine through the opening and causing plaintiff the injuries which are the basis of this suit.

Plaintiff alleged that the bridge was defective and insufficient for the traffic that was traversing it daily to the knowledge of the said defendant; that he had no notice or knowledge or reason to believe that the bridge was defective; and that it was the duty of the town to furnish for the use of the public safe and complete bridges on its streets open to traffic which it had failed to do.

The defense, briefly stated, is that plaintiff was wholly responsible for the accident which he caused by negligently driving a caterpillar tractor of enormous weight equipped with grousers or flanges and pulling a lot of wagons downhill over a bridge which was not constructed or intended to carry such unusual and extraordinary traffic; that plaintiff had been warned not to traverse Union street or this bridge with the tractor, or, if he was not personally warned, he was charged with knowledge of that fact because the company by whom he was employed, together with other oil companies, had been so warned and had agreed not to use said street, but to use Pine and College streets, which said companies were to keep in repair and use at their own risk.

The judgment below was in favor of defendant, and plaintiff has appealed.

The evidence shows that during the fall of 1919 the oil companies operating in the Homer Field began to use caterpillar tractors to haul pipe and material for the construction of pipe lines and tanks. This unexpected and unusual traffic broke in bridges and tore up roads and streets to such an extent that it resulted in a conference being held between the mayor, members of the council, and street committee of the town of Minden, with the representatives of the oil companies, among whom was a representative of the Standard Oil Company of Louisiana. At this conference it was agreed that the oil companies would use only Pine and College streets, making all necessary repairs thereto and assuming all risk and responsibility thereon, in hauling their material from their depot in the town to their tank farms in the country.

Thereafter, the drivers of the tractors continued to use Pine and College streets until a bad spot developed in College street, when the drivers began to use, or attempted to use, Union street. The city marshal arrested two of these drivers, but they were released, as their actions constituted only violations of a private agreement and not of an ordinance with a penalty attached. Shortly after that the accident happened in which plaintiff was injured.

The bridge in question rested on concrete abutments 6 feet high and 10 feet apart. The girders were 4 by 4 oak timbers 2 feet apart, and the flooring was of the same material.

The tractor was equipped with grousers or flanges. In a book of instructions issued by the Holt Manufacturing Company on the "Care and Operation of Caterpillar 10-Ton Tractor," a grouser is explained to be "An assembly which clamps onto the track link for the purposes of increasing traction in slippery ground."

Attached to the tractor, on the day of the accident, was an eight-wheel Lindsey wagon containing some empty gas tanks.

Plaintiff drove the machine and its trailer down the hill, coming to a stop about two feet from the bridge, in order to obtain water from the little stream to fill the radiator. Plaintiff's helper made three trips for the water, and when he got back on the tractor,

it was started in low gear, and when the machine was well onto the bridge it collapsed, and the tractor and the trailer shut up together like a jackknife, catching plaintiff and his helper in between the ends.

It was impossible to tell exactly how the break occurred. It is defendant's contention, which we think is amply borne out by the evidence, that the timbers of the bridge were subjected to an excessive strain by the starting of the tractor and gave way under the enormous weight of the machine.

The bridge was not defective. It was amply able to care for the ordinary traffic for which it was intended. It was not built to sustain an unusual and unexpected load such as was imposed upon it when plaintiff attempted to drive across it with the tractor and its attached trailer.

We are satisfied that the defendant was in no way negligent, and that the accident was due to imprudence and lack of ordinary care on the part of plaintiff.

Judgment affirmed.